, Lapsing, Cb.
J., delivered the opinion of the court. . The inquiry in this case is confined to two questions :
J. Were the proceedings against the American Iron Company valid? and if they were,.
2. What part of the land in question vested in the trustees by virtue of the appointment under which they claim ?
The appointment purports to be of trustees for all the creditors of David Greame and others, naming the -other persons composing the company, among whom are John Elves and Richard' Willis, in trust for Mary,, the wife of William . Croffts, Patrick Crawford and William Meason, executors of James Crawford, Robert Mure and Richard [*375] ^Atkinson,, joint partners with Andrew Seaton, w.ho is become bankrupt, under the style and firm of Hassenclever, Seaton and Croffts, and Andrew Seaton, William, Robertson, Miles Nightingale and Richard Willis, as. assignees of the estate and effects of the said Andrew Seaton, under the said commission of bankruptcyafter which a general description is added, “ late partners and joint dealers in trade, under the name, firm and description of the American Iron Company, or Ringwood Company.”
We think, that considering the long time which has elapsed since the appointment of trustees of the estate of the American Iron Company, the acquiescence of the members of that company in those proceedings, and that the important interests which were stated and' admitted, might be divested if the appointment should be deemed invalid', every intendment, consistent with the rules of law, is to be made in its support.
:The statute, respecting absent debtors does not warrant proceedings against heirs, executors, trustees, or' others claiming merely by right of representation.(a) If, therefore, either *447 from an improper combination of persons or interests in the process, it became voidable or nugatory as to some of the parties, it might be a question how far it was valid as to others.
If all the parties mentioned in the appointment, as interested in their own right, together with the persons described as being represented by others, had formed a co-partnership, the survivors of this co-partnership, as to all personal contracts and interests, would represent the whole. If other persons succeeded to the right of some of the original co-partners, and interested themselves in the concerns of the firm, whatever description they might think proper to assume, they *448 were personally responsible for the co-partnership debts, as much as if they had originally composed a part of the firm.
[*376] *The introduction of the names in the former case, of a set of men who claimed as representatives'of the deceased co-partners, might present an incongruous case ; but such a one as obviously did not vary substantially the interests of the parties whose property was affected by the attachment; their names might well be considered in a process certainly not ■ analogous to, or to be tested by the common law forms, as surplusage, and we think they ought to be so. There are, therefore, strong reasons for considering these additions as merely descriptive of the persons, independent of the aid given to that construction, from the lapse of time, and the acquiescence of the parties affected by the proceedings.
We are, therefore, of opinion, that they are valid on this ground.
The next question is, how is the title to the land in controversy made out under this appointment 1
The letters patent were granted to David Greame and seventeen others, for each one, an undivided eighteenth part of the tract therein described, including the premises in question-, as tenants in common.
Of the patentees, the names of Mary Croffts, James Crawford, Catharine Hassenclever, and Mary Elizabeth Hassenclever, are not inserted in the appointment of the trustees.. In that appointment, John Elves and Richard Willis are described as holding in trusf for Mary, the wife of William Croffts: but the identity of the patentee and debtor' cannot be inferred from this, nor can the privity between his estate, and -that alleged to be vested in -the trustees, be deduced from it.
Patrick Crawford and Gilbert Meason are described as executors of James Crawford ; but this could neither affect or pass his right as a patentee. So that there are four patentees, whose title could not have vested by the appointment, in the trustees.
[*377] *To the remainder, or fourteen undivided eigh *449 teenth parts, the plaintiff has maintained his right of recovery.
The court are, therefore, of opinion, that the verdict ought to be modified, conformably to the agreement of the parties, by entering it for that proportion of the premises for the plaintiff, and for the remainder for the defendant.
Judgment accordingly.

 In the matter of Hurd, .9 Wend. 465, it was decided, that an attachment does not lie against an administrator for a demand against his intestate, under the act against absconding, concealed, and, non-resident debtors, and that the want of jurisdiction might be objected, even after the appointment of trustees. In this case Nelson, J. observes: “ In Jackson v. Walworth, 1 Johns. . Cas. 373, it was holden that the then existing statute respecting absent, debt *447 ors did not warrant proceedings against heirs, executors, trustees or others claiming merely hy right of representation. The statute is now much more explicit than it was previous to the revision, and from a note of the revisers we are warranted in the conclusion that its phraseology was altered to conform to the decision in Jackson v. Walworth. The language of the act is, ‘ Such application, (i. e. the application for the attachment,) may he made by any creditor resident within the state, or out of it, or by his personal representatives, having a demand against such debtor personally,* &c., 2 R. S. 3, § 3, speaking of the debtor in his individual character, in contradistinction to the representative character of an executor or administrator. It is also worthy of remark, that although in this very section the remedy by attachment is given to the personal representatives of the creditor, it is not given against the personal representatives of the debtor, which it is fair to presume would have been done, had such been the intention of the legislature. A subsequent section, however, removes all doubt as to the intention of the legislature: By the 64th section, page 13, it is enacted, that if a debtor against whom a warrant of attachment has issued, shall die before the time limited for his appearance, the proceedings on the warrant shall be stayed, and the property seized shall be delivered to his personal representatives. Had it been contemplated that the representatives of the deceased debtor might be proceeded against under this" statute, this provision would not have been found in the statute, and on the contrary, provision would have been made for the continuance of the proceedings against the representatives. In view of this explicit enactment that the proceedings already commenced shall stay in case of the death of the debtor, and that the property seized shall he delivered to his personal representatives, the language of the previous sections should be strong and imperative indeed, to warrant the conclusion that proceedings may originally be instituted against representatives. Instead of being so, they appear to me to justify no other construction than that an attachment can issue only against a debtor f^r a demand against him personally, or in his individual character."